### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01124-SBP

C.E.C,

     Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

     Defendant.

---

### OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

     This civil action arises under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, for review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying the application for Disability Insurance Benefits ("DIB") filed by Plaintiff C.E.C. ("Plaintiff"). For the reasons set forth in this Order, the Commissioner's decision is AFFIRMED.

### BACKGROUND

     Plaintiff filed for DIB on January 22, 2019, claiming that she was disabled starting January 3, 2019. ECF No. 6-2 at 19.[1] Plaintiff's claim was denied by an administrative law judge

---

[1] When citing to the Administrative Record, the court utilizes the docket number assigned by the Case Management/Electronic Case Files ("CM/ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the CM/ECF system.

("ALJ") on November 1, 2021. ECF No. 6-1 at 1. The Appeals Council denied Plaintiff's

Request for Review, thereby leaving the ALJ's decision final and subject to judicial review.

Jurisdiction is proper under 42 U.S.C. § 405(g). Plaintiff then filed her complaint in this court on

May 5, 2022.

## I.      *The Hearing*

On October 22, 2021, the ALJ heard testimony from Plaintiff and a vocational expert

("VE"). ECF No. 6-2 at 81. Plaintiff testified that the only work she has done in the last 30 years

is to work as a massage therapist *Id*. at 52. Plaintiff alleged that she suffers from chronic pain

syndrome, and as a result, she experiences pain in her hands, shoulders, feet, knees, hips, and

neck. *Id*. at 53. Plaintiff testified that she experiences pain, swelling, and consistent and

worsening tremors in her hands, which makes giving massages difficult and painful. *Id*. at 52-55.

Plaintiff also testified that she has chronic pain and tremors in her upper neck and shoulders due

to a car accident, pain in her feet when she stands up, and a tumor near her brainstem, called a

meningioma. *Id*. at 56-59, 72-73. She alleged that her tumor does not appear to be growing or

causing her neurological defects, but that surgery to remove it would be potentially life

threatening *Id*. at 58. Plaintiff reports experiencing profound fatigue and severe depression

because of her physical condition, and has been diagnosed with myalgic encephalomyelitis

("ME"), a form of chronic fatigue *Id*. at 61. Plaintiff testified that she takes medication to control

her seizures, and that she suffers from periodic incontinence. *Id*. at 63-64.

Plaintiff testified that her chronic pain necessitates that she lie down an average of three

to four hours in a day. *Id*. at 63. Plaintiff testified that she is able to go grocery shopping on a

good day, and that she can lift the groceries but prefers help from others, and will need to lie

down for the rest of the day after one trip to the grocery store. *Id*. at 66. Plaintiff testified that she can sit or stand for about 20 minutes before needing to change position, and that she can walk from 10-15 minutes at a time, and needs walking sticks to do so. *Id*. at 67. She alleged that she can lift 7-10 pounds at a time comfortably. *Id*. at 67. Plaintiff testified that she has two to four bad days out of the week. *Id*. at 68. She mentioned that when she drives between Tucson and Pagosa Springs, the drive is 10 hours, and it takes her around 3 days so that she can lie down in her car frequently. *Id*. at 69-70.

      The ALJ confirmed that Plaintiff used to receive injections in her neck for pain, but stopped after she says her primary care doctor told her to stop, when the meningioma was found near her brain stem. *Id*. at 72-73 (discussing Exs. 15F/26, 4F/1 and 2).[2] The ALJ also asked about plaintiff's use of physical therapy, which plaintiff says she stopped because it hurt. *Id*. at 75. The ALJ inquired about Plaintiff's use of massage and acupuncture, which Plaintiff claims that she can no longer afford. *Id*. at 76.

      When the ALJ took the testimony of the VE, the VE testified that Plaintiff's prior work as a massage therapist was performed at a light level. *Id*. at 84. Then, the ALJ posed several hypotheticals to the VE, asking the VE to imagine someone of Plaintiff's age, education and work experience; who can perform a light level of exertion; has the full exertional range, including the ability carry twenty pounds occasionally and ten pounds frequently; can understand, remember, and carry out more than simple, but less than complex tasks that can be learned in six months' time or less; can maintain concentration, persistence, and pace; can make

---

[2] The record reflects that Plaintiff's meningioma appears to be stable and is not causing her pain symptoms. ECF. 6-2 at 22.

routine work-related decisions; can plan and set goals; can adapt to routine workplace changes; can travel; and can recognize and avoid ordinary workplace hazards. *Id*. The VE testified that such an individual could perform Plaintiff's past work as she performed it, but not as described by the Dictionary of Occupational Titles ("DOT") and typically performed. *Id*.

The VE then responded to a second hypothetical: if the individual had all the previously listed attributes and could also frequently reach, handle, and finger bilaterally, the VE found that this individual would still be able to find work. *Id*. On the other hand, when the ALJ asked what would happen if this same hypothetical individual was off task 15% or more in a workday, the VE responded that this person would not be able to find work. *Id*. at 85. All competitive work would be eliminated. *Id*. at 85. Plaintiff's attorney then asked about work if the hypothetical individual were limited to occasional reaching, handling, and fingering, and was off task for 20% of the workday and was missing 3-4 days of work a month. *Id*. The VE responded that that many absences would eliminate competitive work. *Id*. The ALJ asked the VE if his testimony was consistent with the DOT and its companion publication, the Selected Characteristics of Occupations ("SCO"). *Id*. at 86.  The VE responded that his testimony did not conflict with those documents, except that they did not address being off task, or absences. *Id*. On those topics, the VE based his testimony on his professional experience. *Id*.

## II.      *The Hearing Decision*

On November 4, 2021, the ALJ issued her decision, finding that Plaintiff is not disabled under sections 216(i) and 223(d) of the Act, and is therefore not eligible for DIB. *Id*. at 38. The ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2024. *Id*. at 21. Next, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since January 3, 2019, the alleged disability onset date, and had the following severe impairments: degenerative disc disease of the cervical spine, myofascial pain syndrome, chronic fatigue syndrome, depression, and anxiety. *Id*. The ALJ found that these impairments significantly limit Plaintiff's ability to perform basic work activities. *Id*. at 22. The ALJ next found that Plaintiff's seizure disorder/epilepsy, essential tremor, meningioma, historical diagnosis of dyslexia and dyscalculia, urinary tract infections, stress incontinence, an impairment of the thoracic spine seen on recent imaging, bilateral chondromalacia, allergies, and herpes are non-severe. *Id*. These conditions were non-severe because they did not cause more than minimal functional limitations. *Id*. The ALJ found that, according to medical records, Plaintiff's meningioma was stable and not causing her neurological impairment or pain symptoms; her seizure disorder was controlled; her knee has normal function; her thoracic spine impairment does not meet durational requirements; her tremor is longstanding; and her incontinence does not impact her function. *Id*. at 22-3. The ALJ further found that Plaintiff had several other "diagnoses" that were not medically determinable, such as psoriasis, Stevens-Johnson syndrome,[3] a sleep disorder, in utero des exposure[4] and neuropathy.[5] *Id*. at 22.

---

[3] Stevens-Johnson syndrome is a skin disease characterized by blisters, sores, and peeling skin, that can be caused by a reaction to medication, infections such as herpes, or other catalysts. *Stevens-Johnson Syndrome*, CLEVELAND CLINIC, (Dec. 18, 2020), https://my.clevelandclinic.org/health/diseases/17656-stevens-johnson-syndrome.

[4] "Des," or diethylstilbestrol, is an artificial estrogen that was prescribed to many pregnant women between 1940 and 1971. Exposure to des in utero can increase risk of certain kinds of cancer, miscarriage, ectopic pregnancy, infertility, autoimmune conditions, cardiovascular disease, pancreatic disorders, early menopause, and depression. *Diethylstilbestrol (DES) Exposure and Cancer*, NATIONAL CANCER INSTITUTE AT THE NATIONAL INSTITUTES OF HEALTH, https://www.cancer.gov/about-cancer/causes-prevention/risk/hormones/des-fact-sheet.

[5] Neuropathy is damage to nerves that can create "weakness, numbness and pain, usually in the hands and feet." It can be caused by autoimmune diseases, diabetes, infections, inherited disorders, tumors, bone marrow disorders, and other health issues. *Peripheral neuropathy*,

Next, the ALJ determined that the claimant does not have significant mental impairment. *Id*. at 31. After accounting for all conditions, the ALJ wrote:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work, as defined in 20 CFR 404.1567(b), including the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can understand, remember, and carry out more than simple but less than complex tasks that can be learned and mastered in up to six months' time or less. At such levels, she can maintain concentration, persistence, and pace, can make routine work-related decisions, can plan and set goals, can adapt to routine workplace changes, can travel, and can recognize and avoid ordinary workplace hazards.

*Id*. at 25.

The ALJ wrote that in making this finding, she "considered all symptoms and the extent to which these symptoms can be reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id*. at 25. The ALJ explained that while Plaintiff's impairments could be expected to cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*. at 27. The ALJ cited the fact that Plaintiff makes the drive from Pagosa Springs, Colorado to Tucson, Arizona fairly frequently as evidence that there is no support for her statements that she needs to nap daily. *Id*. at 30. The ALJ wrote that Plaintiff can take care of herself and that, therefore, she has functional capacity. *Id*. at 33. The ALJ concluded that there was no support for finding that Plaintiff suffers from any cognitive issues. *Id*. at 32. Ultimately, the ALJ found evidence from Drs. Bell, Madden, Scott and Naplin

---

MAYO CLINIC, (Sept. 2, 2023), https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061.

the most persuasive. *Id*. at 34-6. These doctors opined that Plaintiff could perform light work and only had mild mental limitations. *Id*.

The ALJ therefore concluded that the claimant can perform past relevant work as a massage therapist because this work does not require the performance of activities barred by Plaintiff's residual functional capacity. *Id*. at 37.

### III. Judicial Review

Plaintiff proceeded to file a Complaint and Petition for Review directly in this District on May 5, 2022, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). ECF No. 1 at 1-2. All parties consented to Magistrate Judge jurisdiction. ECF No. 7 at 1-2. Because this matter is ripe for resolution, this court considers the Parties' arguments below.

## LEGAL STANDARD

An individual is eligible for DIB if that individual a) "is insured for DIB," b) "has not attained retirement age," c) is a United States citizen, has a social security number or had qualifying employment, d) "has filed [an] application for DIB," and e) has a disability as defined by the Act. 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which will either result in death or last longer than 12 months. 42 U.S.C. § 423(d)(1)(a).

To qualify as disabled, an applicant must not only be unable to perform her prior work, but also "cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether

such work exists in the immediate area in which [she] lives, or whether a specific job vacancy

exists for [her], or whether [she] would be hired if [she] applied for work." 42 U.S.C.

§ 423(d)(2)(A). If the Commissioner finds that the applicant has multiple medical impairments,

and the combined impacts of these impairments together are "medically severe," then it is this

combined impact that should be used to determine DIB eligibility. 42 U.S.C. § 423(d)(2)(B).

The Code of Federal Regulations sets out a five-step process for evaluating whether an

applicant is disabled. To be found disabled, an applicant must

1) Not be participating in "substantial gainful activity";

2) Have a "severe medically determinable physical or mental impairment" that will either

   result in death or last for 12 months;

3) Have an impairment that "meets or equals" an impairment listed in Title 20, Chapter III,

   Part 404, Subpart P, Appendix 1;

4) Not be able to perform past relevant work, based on a finding of the applicant's residual

   functional capacity ("RFC"); and

5) Not be able to perform any other work in the national economy appropriate to the

   applicant's age, education and work experience, based on the applicant's RFC.

20 C.F.R. § 404.1520(a)(4)(i-iv). If an applicant is found to be disabled or not disabled at any

step, the inquiry may cease and further steps are not required. 20 C.F.R. § 404.1520(a)(4). An

applicant must prove steps 1-4, while the Commissioner bears the burden of proof for step 5. 20

C.F.R. § 404.1512; *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

When a court is reviewing the Commissioner's final decision on whether the applicant is

entitled to DIB, a court may only overturn the Commissioner's decision if it was not supported

by substantial evidence or if the correct legal standards were not applied. *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). Substantial evidence must be sufficient to support a conclusion but cannot be a conclusion in and of itself. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). In reviewing DIB determinations, a court may not "reweigh the evidence," nor may it replace the ALJ's judgment with its own. *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

"The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. --, 139 S. Ct. 1148, 1154 (2019) (quoting *T-Mobile South, LLC v. Roswell*, 547 U.S. 293, 301 (2015)). In applying the substantial-evidence standard

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contacts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* (cleaned up); *Noreja v. Commissioner, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020) ("Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

In making the substantial-evidence determination, this court "may 'neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). The court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting

*Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)); *see also Zoltanski*, 372 F.3d at 1200

("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's findings from being supported by substantial evidence.") (internal

citation omitted). Even so, this court must "meticulously examine the record as a whole,

including anything that may undercut or detract from the ALJ's findings in order to determine if

the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009)

(quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). "[C]ourts are to treat factual

findings supported by substantial evidence as 'conclusive.'" *Noreja*, 952 F.3d at 1179; *see also*

42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive.").

      In addition, this court's review is guided by the Tenth Circuit's application of the

harmless error doctrine to social security disability cases. *See Allen v. Barnhardt*, 357 F.3d 1140,

1145 (10th Cir. 2004). A court "may apply harmless error in the social security context 'where,

based on material the ALJ did at least consider (just not properly), [it] could confidently say that

no reasonable administrative factfinder, following the correct analysis, could have resolved the

factual matter in any other way.'" *Armijo v. Astrue*, 385 F. App'x. 789, 792 (10th Cir. 2010)

(quoting *Allen*, 357 F.3d at 1145).

## ANALYSIS

      Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence and

therefore is incorrect because the ALJ did not appropriately consider plaintiff's self-described

limitations, which she contends are well supported by the record. ECF No. 10 at 1. This court

may only overturn the Commissioner's decision if it was not supported by substantial evidence,

or if the correct legal standards were not applied. *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017).

      As described below, this court finds that the ALJ's decisions were supported by substantial evidence, and that the correct legal standards were applied. Therefore, this court affirms.

### I.    *RFC Determination Legal Standards*

      An applicant's RFC is determined by considering the combination of all relevant impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013). An RFC is based on the applicant's "maximum sustained work capacity," not her minimum. 20 C.F.R. § 404, subpt. P, app. 2. In determining an applicant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 (SSA 1996)). The ALJ does not necessarily need to cite to medical evidence in each exertional work level before making an RFC determination. *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("We also reject claimant's implicit argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category."). A court may only overturn an RFC determination if the court finds that it was not supported by substantial evidence or that it was not consistent with the record. *Id.* at 947; *see also B.A.Y. v. Kijakazi*, No. 22-cv-02376-NYW, 2023 WL 4999953, at *4 (D. Colo. Aug. 4, 2023).

In determining RFC, an ALJ must consider "all medical opinions in the record" and "discuss the weight [s]he assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). For claims filed after 2017, the ALJ must consider five factors in determining how persuasive a medical opinion may be: 1) supportability, 2) consistency, 3) the length, frequency, purpose, and extent of the claimant's relationship with a medical provider, 4) the specialization of the provider, and 5) other factors that may "support or contradict a medical opinion or prior medical finding." 20 C.F.R. § 404.1520c(c). However, supportability and consistency are "the most important factors" in determining the persuasiveness of any given medical source. 20 C.F.R. § 404.1520c(b)(2). Therefore, an ALJ must explain her approach to those two factors. *Id*. An ALJ may describe her approach to evaluating the extent of the claimant's relationship to the provider, the specialization of the provider, and other factors, unless two or more medical opinions "about the same issue are both equally well-supported." 20 C.F.R. § 404.1520c(b)(2)–(3). A medical opinion exhibits "supportability" if the provider included relevant "objective medical evidence and supporting explanations [. . .] to support his or her medical opinions." 20 C.F.R. § 404.1520c(c)(1). A medical opinion exhibits "consistency" if the opinion is similar to other medical or administrative opinions. 20 C.F.R. § 404.1520c(c)(2). The ALJ must describe which evidence she is relying on, which evidence she is not, and which "significantly probative evidence [s]he rejects." *B.A.Y. v. Kijakazi*, No. 22-cv-02376-NYW, 2023 WL 4999953, at *4 (D. Colo. Aug. 4, 2023), quoting *Mestas v. Kijakazi*, No. 20-cv-01865-REB, 2021 WL 3030224, at *3 (D. Colo. July 19, 2021)).

In evaluating a claimant's pain, an ALJ must consider "(1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose

nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir.1993)). To evaluate the credibility of a claimant's description of pain, an ALJ can consider 1) "daily activities," 2) "location, duration, frequency and intensity" of pain, 3) "precipitating and aggravating factors," 4) medication, including effectiveness, dosage, and side effects, 5) other treatment for pain relief, 6) other measures used to relieve pain, and 7) functional limitations. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Credibility determinations are "the province of the finder of fact," and should not be overturned when supported by substantial evidence. *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995), quoting *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings should not just be a "conclusion in the guise of findings." *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988)). An ALJ may find a claimant incredible because of inconsistencies in the record. *Wilson*, 602 F.3d at 1146.

## II.    Discussion

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence and is incorrect because the ALJ did not appropriately consider Plaintiff's self-described limitations, which she contends are well-supported by the record. ECF No. 10 at 1. As described below, this court finds that the ALJ's decisions were supported by substantial evidence, and that the ALJ applied the correct legal standards.

A. *The ALJ's determination that Plaintiff has a capacity for light work is supported by substantial evidence.*

The ALJ found that Plaintiff's "impairments reasonably would restrict her from performing heavy lifting and only allow[] her to perform light work." ECF No. 6-2 at 36-37. "Light work" is a disability determination defined in 20 C.F.R. § 404.1567(b) as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Light work can include "a good deal of sitting or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. "To be considered capable of performing a full or wide range of light work," a complainant must "have the ability to do substantially all of these activities." *Id*.

The ALJ's determination that Plaintiff has the capacity for light work is supported by substantial evidence, which the ALJ conveys by referencing Plaintiff's subjective experience of pain, surveying imaging and other medical evidence on the record; describing why certain medical providers are more credible than others; investigating the conservative care received by Plaintiff to treat her pain; and discussing inconsistencies in Plaintiff's testimony. ECF No. 6-2 at 25. The ALJ pointed to the VE's testimony as having "*classified the claimant's past work as a massage therapist,* DOT code 334.374-010, which is medium work as generally performed and *light work as actually performed*, with [a Specific Vocation Preparation] of four." *Id*. at 37 (emphasis added). The ALJ thus concluded that Plaintiff's former work as actually performed was in fact "light work." Therefore, Plaintiff could still perform her former work for the time she claimed disability.

In reaching her conclusions concerning Plaintiff's RFC, the ALJ appropriately considered Plaintiff's subjective evidence and weighed it against the objective evidence in the record. She discussed Plaintiff's experience of pain and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id*. at 27. However, Plaintiff's subjective "statements concerning the intensity, persistence and limiting effects of these symptoms" described pain more severe than suggested by the medical record. *Id*. Therefore, "given the objective abnormalities seen on [Plaintiff's] cervical spine imaging scans, as well as the totality of the medical evidence, including her complaints of pain, the claimant is reduced to light work." *Id*. In addition, the ALJ determined that Plaintiff's "objective imaging scans have generally remained unremarkable with the exception of her cervical spine," and that "her physical examination findings are also generally unremarkable, noting a normal gait, normal strength, and normal range of motion findings." *Id*. The ALJ noted that although Plaintiff subjectively discussed swelling and pain in her hands, there was no evidence of these issues in the medical record. *Id*.

In other words, the ALJ credited both Plaintiff's subjective experience of pain *and* the medical records in determining Plaintiff's RFC in compliance with the legal standard. *Branum*, 385 F.3d at 1273 (quoting *Thompson*, 987 F.2d at 1488)). Moreover, the ALJ appropriately weighed all the different medical opinions by addressing the persuasiveness of, paying particular attention to supportability and consistency. The ALJ delineated why she found the findings of at least six medical providers persuasive or not—including the supportability of their findings, the consistency of their findings, and the length and frequency of time that the provider had seen Plaintiff. *Id*. at 35-37. The ALJ discussed the supportability of the providers' findings in relation

to how closely the provider examined Plaintiff's medical record, and whether the provider examined her in person, and if so, for how long. *Id*. The ALJ also noted when providers were inconsistent with each other. *Id*. at 34.

Ultimately, the ALJ found the opinions of Dr. Bell, Dr. Madden, and Dr. Silva persuasive, because they most closely cited the medical record or, in Dr. Silva's case, examined her in person. *Id*. Drs. Bell and Madden found that Plaintiff was capable of light work. *Id*. at 34. Dr. Silva found that Plaintiff could, in a normal 8-hour workday, sit for 4-6 hours, stand for 4-6 hours, and walk for 4-6 hours. ECF No. 6-10 at 1446. Dr. Silva noted that doing any of these activities "for long periods of time may exacerbate [Plaintiff's] chronic pain." *Id*. But Dr. Silva also noted that Plaintiff should be able to lift 10-15 pounds frequently and 15-20 pounds occasionally, and wrote that Plaintiff had no manipulative limitations, including "reaching, pushing, pulling, handling, grasping, fingering and/or feeling." *Id*. The ALJ found the opinion of Dr. Garcia to be vague and only somewhat persuasive, though he, too, examined Plaintiff once and found her to be capable of light work. ECF No. 6-2 at 34. Finally, the ALJ found the opinion of Dr. Reed to be unpersuasive, because Dr. Reed supported her finding that Plaintiff could not work by "referencing the [Plaintiff's] subjective symptoms" instead of supplying her own "objective signs and findings." *Id*. at 34-5.

In terms of Plaintiff's mental health, the ALJ found the opinions of Dr. Scott and Dr. Naplin to be persuasive because of their close examination of Plaintiff's medical record. *Id*. at 35-36. They found that Plaintiff's mental ability was "sufficient for employment." *Id*. at 36. By contrast, the ALJ found Dr. Ragsdale's opinion to be only somewhat persuasive. *Id*. Dr. Ragsdale found Plaintiff's ability to be somewhat limited but did not support this finding with references

to relevant, specific ways Plaintiff was limited. *Id*. In any event, Dr. Ragsdale that Plaintiff was able to "maintain two-hour increments of sustained concentration for work." *Id*.

In short, substantial evidence supports the ALJ's conclusions concerning all of the medical opinions in the record.

Plaintiff resists this conclusion and claims that, to the contrary, "*all* of [Plaintiff's] providers opined, at minimum, that she could not work as a massage therapist," and "if she cannot perform her past relevant work *and* has no transferable skills to other work, she must be found disabled." ECF No. 8 at 11-12 (emphasis in original). But this is not persuasive. The ALJ did find that Plaintiff was able to perform her past relevant work based on the relevant standard. That standard requires that the ALJ consider "all medical opinions in the record," not just Plaintiff's providers, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012)—which the ALJ unquestionably did.

Plaintiff's argument is also unpersuasive because she cites only three pages of the record (ECF No. 6-7 at 429, *id*. at 480, and ECF No. 6-10 at 1407) to support her contention that "all" of her providers say that she could not work as a massage therapist. ECF No. 8 at 11-12. The providers' cited opinions were not as definite as Plaintiff suggests. On page 429, Dr. Hurlbert opined that Plaintiff "*may* have to modify or *perhaps* completely change her current vocation" (emphasis added). ECF No. 6-7 at 429. Dr. Hurlbert's statement therefore does not express certainty that Plaintiff definitely cannot work as a massage therapist. On April 19, 2019, Dr. Levison wrote that Plaintiff "is wanting to apply for social security disability but appears healthy and well enough to perform other type of work other than massage." ECF No. 6-7 at 480.

Lastly, Plaintiff cites to Dr. Reed's letter, which—as noted above—the ALJ did not find persuasive because, while Dr. Reed identified diagnoses and symptoms, she did not "support her opinion with objective signs and findings." ECF No. 6-2 at 35. There is a dearth of medical observations in Dr. Reed's letter. ECF No. 6-10 at 1407-08 and ECF No. 6-2 at 35. The ALJ addressed in detail the sparseness of Plaintiff's treatment history with Dr. Reed. ECF No. 6-2 at 35. Those findings are supported; a reasonable mind could conclude—for instance, from Dr. Reed's letter itself, which reflects only a five-month patient relationship, let alone from the many records that the ALJ addressed—that Dr. Reed's opinion was not entitled to as much weight as the medical opinions that were supported by objective evidence.

B.  *Plaintiff's claims that the ALJ misstates the record are unsupported.*

Plaintiff also claims that the ALJ misstates the record about the treatment Plaintiff received in at least four instances. ECF No. 8 at 15-7. None of these claims are supported.

First, Plaintiff alleges that the ALJ is wrong that Plaintiff was "'not even in physical therapy.'" ECF No. 8 at 15. But Plaintiff simultaneously claims that she both stopped physical therapy because it was too painful and requested a physical therapy referral after the alleged disability onset date. *Id*. She asserts that her provider did not give her such a referral because it was not practical given her upcoming move. *Id*. The ALJ wrote that Plaintiff "has not even engaged in any conservative physical therapy since the alleged onset date"—a claim that Plaintiff does not ultimately offer any substantive evidence to refute. ECF No. 6-2 at 27.

Second, Plaintiff claims that the ALJ was dismissive of Plaintiff's treatment plan because Plaintiff was not a surgical candidate. ECF No. 8 at 15. But Plaintiff, the ALJ, and Plaintiff's medical providers agree that Plaintiff *not* in fact a surgical candidate. ECF No. 6-2 at 28.

Third, Plaintiff claims that the ALJ mistakenly asserted that Plaintiff could have sought massage or acupuncture. ECF No. 8 at 16. Plaintiff points to her testimony at the hearing in which she stated that she could not afford these treatment options, and argues that because the ALJ "offered no evidence that [Plaintiff's] insurance provider did cover these other options," her failure to seek these treatment options is "justifiable." *Id*. However, Plaintiff did not offer any affirmative evidence that her insurance provider actually did *not* cover these treatment options. *Id*.

Fourth, Plaintiff claims that the ALJ misstates the evidence concerning Plaintiff's record of taking medication and seeking relief for pain. ECF No. 8 at 17. Plaintiff contends that "the ALJ admonished that Plaintiff did not 'even' take medication regularly 'until recently.'" *Id*. Plaintiff alleges that the ALJ ignores that Plaintiff began taking Primidone for tremors in 2018, Flexeril for myofascial pain since at least 2019, Valacyclovir for myalgic encephalomyelitis since 2020, Naltrexone since 2020, and Guaifenesin for nerve pain in 2020. *Id*. The record is to the contrary.

The ALJ discusses four of these five drugs in her opinion. She mentions Plaintiff's use of Flexeril and Naltrexone. ECF No. 6-2 at 30. The ALJ writes that Plaintiff's naltrexone use began "on or about May 2021." *Id*. This is at least several months later than Plaintiff alleges, and a careful review of the record reveals that the ALJ accurately described the data: on the date Plaintiff claims to have started taking naltrexone, her provider only discussed the drug with her, but did not prescribe it to her at that time. ECF No. 6-10 at 1477. The ALJ also discusses Plaintiff's use of Primidone and Guaifenesin. ECF No. 6-2 at 23, 29.

Finally, Plaintiff argues that according to the Agency, multiple attempts to seek relief from pain might show that an individual's symptoms are "intense and persistent," but that the ALJ "barely acknowledged" Plaintiff's multiple efforts to get treatment. ECF No. 8 at 18. The record belies that assertion. The ALJ detailed at least ten individual provider visits in her opinion, thereby crediting Plaintiff's attempts to receive treatment. ECF No. 6-2 at 27-9.

C. *The ALJ appropriately evaluated Plaintiff's credibility under the correct legal standard.*

Plaintiff argues that the ALJ doubted Plaintiff's credibility, but that this suspicion was based on "speculation" and was therefore unfair. ECF No. 8 at 14. But according to the legal standard, credibility determinations are "the province of the finder of fact," and should not be overturned when supported by substantial evidence. *Wilson v. Astrue*, 602 F.3d at 1144. Here, the record confirms that standard is readily met.

An ALJ may find a claimant incredible because of inconsistencies. *Id*. at 1146. The ALJ here outlined several inconsistencies as reasons to find Plaintiff incredible, in compliance with the standard.  For example, Plaintiff claimed that she could not get any more injections in her neck to stabilize her pain because of her meningioma, but the ALJ noted that Plaintiff did not have documentation that a medical provider told her to stop the injections. ECF No. 6-2 at 30. Plaintiff subjectively described difficulty taking care of herself, but the ALJ found that there was little support for this, given that Plaintiff goes on long road trips between states, gets to appointments, goes grocery shopping, lives independently and generally does take care of herself. *Id*. at 31. The ALJ further found that Plaintiff's allegations of mental impairments were "generally inconsistent with the objective medical advice." *Id*. at 31. While Plaintiff argued that the ALJ did not credit her strong work history enough in determining Plaintiff's credibility, ECF

No. 8 page 18, the ALJ in fact acknowledged that Plaintiff "worked as a massage therapist for over 20 years" at a light level. ECF No. 6-2 at 37.

Plaintiff is incorrect that the ALJ "erred by rejecting [Plaintiff's] self-description of her limitations," which she alleges "are well supported in the record." ECF No. 10 at 1. Ultimately, Plaintiff asks this court to reweigh the evidence, which this court may not do. *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) (in making the substantial-evidence determination, the court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's"). The ALJ's decision cannot be overturned because it was based on "substantial evidence" and application of the correct legal standards. *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). As such, this court must affirm.

## CONCLUSION

For the reasons stated herein, this court **AFFIRMS** the Commissioner's final decision. Judgment shall enter accordingly.

DATED:  March 28, 2024                    BY THE COURT:

_____

Susan Prose
United States Magistrate Judge